401 A.2d 448.

STATE *vs.* DENNIS JAMES BERARD.

MAY 17, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

552

WEISBERGER, J. The defendant was charged in the Family Court with five delinquency petitions arising out of allegations that he had conveyed hypodermic needles, a syringe and certain controlled substances into the Adult Correctional Institutions. The Family Court determined that it did not have jurisdiction because G.L. 1956 (1969 Reenactment) §14-1-7.1 excludes from the jurisdiction of the Family Court a juvenile defendant over the age of 16 who is charged with conduct amounting to one or more felonies when he has committed two prior offenses which would have constituted felonies had he been an adult.[1] Thereafter, the Attorney General filed a seven-count information in the Superior Court for Providence and Bristol Counties charging the

---

[1] Section 14-1-7.1 reads as follows:

"A child sixteen (16) years of age or older who has been found delinquent for having committed two (2) offenses after the age of sixteen (16) which would render said child subject to an indictment if he were an adult, shall be prosecuted for all subsequent felony crimes by a court which would have jurisdiction of such offense if committed by an adult."

defendant with conspiracy to violate the Rhode Island Uniform Controlled Substances Act by delivering a controlled substance, a hypodermic needle and a syringe, conveying contraband into the Adult Correctional Institutions, possession of a hypodermic needle and syringe, possession of a controlled substance with the intent to deliver, and conspiracy to convey a controlled substance into the Adult Correctional Institutions. After arraignment defendant filed a motion to certify to the Supreme Court a question regarding the constitutionality of §14-1-7.1. After a hearing on this issue, the trial justice declined to certify the question but found that §14-1-7.1 was unconstitutional on due process grounds because it provided for an automatic waiver of jursidiction by the Family Court without reasonable guidelines for its application.[2] The trial justice also found that §14-1-17.1 denied equal protection to the class of juvenile offenders described therein. The matter is before us on the state's appeal from the judgment of the Superior Court justice dismissing the case against defendant.

A historical sketch of the treatment of juveniles under the criminal law will serve to place the instant controversy in perspective and will aid us in determining the constitutionality of this statute. Under ancient Saxon law criminal responsibility began at age 12 with regard to capital crimes. From the time of Edward III, however, the common law divided juveniles into three groups for purposes of criminal responsibility. An infant under age 7 could not be guilty of a felony. Between the ages of 7 and 14, a child was deemed prima facie to be incapable of exercising felonious discretion, but this presumption was rebuttable and a court might find that such an individual was responsible for his acts. Blackstone reports that many children between the ages of 7 and 14 were executed for various crimes. Above the age of 14 a person was deemed fully responsible for felonious conduct.

---

[2]Section 14-1-7.1 is unlike G.L. 1956 (1969 Reenactment) §14-1-7 which provides for waiver of jurisdiction by a judge of the juvenile court "after full investigation."

*See* 4 Blackstone, *Commentaries on the Laws of England* 23-24 (1769); 3 Coke, *Institute of the Laws of England,* 571 (Thomas ed. 1826); LaFave & Scott, *Criminal Law* §46 at 351 (1972).

Mr. Justice Fortas suggested in In Re Gault, 387 U.S. 1, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967), that the juvenile court movement in the United States may be traced to an Illinois statute which was adopted in 1899. Rhode Island has long been a leading jurisdiction in this movement. As early as 1857 a Rhode Island statute provided for a reform school for children under the age of 18 years convicted of a criminal offense by any state court. Admittance to the reform school was within the discretion of the trustees. R.I. Rev. Stat. 1857, ch. 227. A similar statute was subsequently codified as G.L. 1896, ch. 290, which provided for a reform school for juvenile offenders under the age of 18. Separate departments were provided for boys and girls. Three years later and approximately contemporaneous with the passage of the Illinois statute, the Legislature enacted P.L. 1899, ch. 664, which established within the existing court structure separate trials for juveniles under the age of 16. Soon after the turn of the century, P.L. 1915, ch. 1185, accorded to the district courts juvenile court jurisdiction to try and determine all petitions relating to juvenile delinquency and waywardness. This juvenile jurisdiction covered all crimes committed by juveniles under age 16 except murder and manslaughter. This statute was codified in G.L. 1923, ch. 404 and was recodified in G.L. 1938, ch. 616.

By virtue of P.L. 1944, ch. 1441, a statewide juvenile court was formed for the purpose of dealing with the delinquency and waywardness of juveniles under the age of 18 years. The jurisdiction was transferred to the Family Court in 1961 pursuant to P.L. 1961, ch. 73, now codified as G.L. 1956 (1969 Reenactment) chapter 10 of title 8. Thus, the Legislature of Rhode Island has historically viewed the special treatment of juveniles to be an enlightened and humane policy.

The question which we must address is whether the special treatment of juveniles under the parens patriae power has ripened into a constitutional right which the Legislature may no longer deny to a juvenile, at least not without a due process type hearing. *See In Re Correia,* 104 R.I. 251, 243 A.2d 759 (1968). In support of his due process attack on the statute, defendant relies heavily upon *Kent* v. *United States,* 383 U.S. 541, 86 S. Ct. 1045, 16 L. Ed. 2d 84 (1966), in which the Supreme Court of the United States held that when a question of waiver of jurisdiction by a juvenile court is to be considered, the juvenile is entitled to a hearing on the issue of waiver and to the assistance of counsel in that hearing. The defendant argues that the statute in issue creates an automatic waiver of jurisdiction without providing for the safeguards of hearing and due process mandated by *Kent, supra.*

A number of federal courts have considered this issue under analogous circumstances and have rejected similar arguments. Generally these cases involved an unrestricted prosecutorial decision to charge a juvenile as an adult for certain criminal offenses. In *United States* v. *Bland,* 472 F.2d 1329 (D.C. Cir. 1972), *cert. denied,* 412 U.S. 909, 93 S. Ct. 2294, 36 L. Ed. 2d 975 (1973), the United States Court of Appeals of the District of Columbia upheld the constitutionality of the provision in the District of Columbia Code which excluded from the jurisdiction of the juvenile court persons over 16 years of age who were charged with certain enumerated offenses, without the need for a waiver hearing. And, in *Cox* v. *United States,* 473 F.2d 334 (4th Cir.), *cert. denied,* 414 U.S. 869, 94 S. Ct. 183, 38 L. Ed. 2d 116 (1973), the Fourth Circuit Court of Appeals upheld the constitutionality of a federal statute authorizing a prosecutorial decision to charge a juvenile who was 17 years of age at the time of committing certain offenses, including armed robbery, as an adult, without a hearing. In determining that the statutory scheme vesting such discretion in the Attorney General was constitutional, Chief Judge Haynsworth observed in *Cox* that:

"Many of the protections of the Bill of Rights extend far beyond the courtroom, of course, but the guaranty of a hearing found in the due process clause of the Fifth Amendment has traditionally been limited to judicial and quasi-judicial proceedings. It has never been held applicable to the processes of prosecutorial decision-making. The only proper question here, therefore, is whether the general statutory scheme is constitutional, whether Congress reasonably might vest in the Attorney General, rather than in a judge in a judicial proceeding, the responsibility of deciding whether or not to prosecute a juvenile as an adult. That question is appropriately answered affirmatively." 473 F.2d at 336.

In *Russell* v. *Parratt*, 543 F.2d 1214 (8th Cir. 1976), the Eighth Circuit Court of Appeals considered the constitutionality of Nebraska procedure which permitted a county attorney, without standards or guidelines, to charge a minor defendant as an adult rather than as a juvenile. The court commented on the distinction between prosecutorial discretion and a judicial determination of the type encountered in *Kent* v. *United States, supra*.

"The defendant's reliance upon *Kent* v. *United States*, 383 U.S. 541, 86 S. Ct. 1045, 16 L. Ed. 2d 84 (1966) is misplaced. *Kent* involved a decision of the Juvenile Court of the District of Columbia, waiving jurisdiction to the United States District Court for the District of Columbia. It is the holding of *Kent* that when the question is one of waiver of jurisdiction of a Juvenile Court, and it is to be decided by a judge of the Juvenile Court, the juvenile is entitled to a hearing on the question of waiver, and to the assistance of counsel in that hearing. The decision is, of course, harmonious with our tradition that judicial proceedings involving substantial rights of an alleged criminal shall be attended by the full panoply of due process. But we do not here confront judicial proceedings. Rather, we have simply a traditional exercise of discretion within the

executive branch, and while we recognize that the prosecutor's decision has a substantial impact on the course of subsequent proceedings, we cannot equate the prosecutorial decision with judicial proceedings, absent legislative direction." 543 F.2d at 1216-17.

This holding is in accord with that in *United States* v. *Quinones,* 516 F.2d 1309 (1st Cir.) *cert. denied,* 423 U.S. 852, 96 S. Ct. 97, 46 L. Ed. 2d 76 (1975).

In *Woodard* v. *Wainwright,* 556 F.2d 781 (5th Cir. 1977) *cert. denied,* 434 U.S. 1088, 98 S. Ct. 1285, 55 L. Ed. 2d 794 (1978), a defendant who had been 16 years of age at the time he allegedly committed criminal acts was indicted as an adult for false imprisonment, assault and robbery. The defendant would normally have been treated as a juvenile, but a Florida statute provided that a child of any age charged with a violation of law punishable by death or by life imprisonment would be subject to juvenile court jurisdiction unless and until an indictment on such charge was returned by the grand jury. In that event, the juvenile court would be divested of jurisdiction and the case would proceed as though the defendant were an adult. The defendant challenged the constitutionality of this statutory exception. The Court of Appeals for the Fifth Circuit held that treatment as a juvenile is not an inherent right but one granted by the state legislature. The court observed:

"[T]herefore the legislature may restrict or qualify that right as it sees fit, as long as no arbitrary or discriminatory classification is involved. Chapter 39, Florida Statutes, grants to certain persons age eighteen or younger the right to be charged and tried as juveniles. The section does not grant that right to persons indicted by the grand jury for crimes punishable by life imprisonment or death. This is a legislative classification 'entitled to a strong presumption of validity [which] may be "set aside only if no grounds can be conceived to justify [it]." ' * * * The legislature was entitled to conclude that the *parens patriae* function of

the juvenile system would not work for certain juveniles, or that society demanded greater protection from these offenders than that provided by that system. We should not second-guess this conclusion." 556 F.2d at 785.

The court went on to reject arguments based on *Goldberg* v. *Kelly*, 397 U.S. 254, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970), where the Supreme Court had held that the important right to receive welfare benefits could not be removed by city authorities without a hearing. In commenting upon this aspect of the challenge the court observed:

> "Furthermore, although we agree that juvenile treatment is an 'important right' which may imply a lighter sentence or preferential treatment, we cannot agree that petitioners have any 'brutal need' to be treated as juveniles. Certainly the system of *adult* justice in Florida is well appointed in the accoutrements of due process." 556 F.2d at 785-86.

We turn now to defendant's equal protection challenge to the statute. The Supreme Court of Kansas in *State* v. *Sherk*, 217 Kan. 726, 438 P.2d 1399 (1975), was confronted with a challenge to a Kansas statute not unlike the statute in the case at bar. The Kansas statute provided that a juvenile might be charged with aggravated juvenile delinquency when he had run away or escaped from a juvenile facility more than once. The juvenile court was not given jurisdiction under Kansas law to try persons charged with aggravated juvenile delinquency. In the face of an assertion of the unconstitutionality of this jurisdictional exception, the Supreme Court of Kansas held that this was a rational classification and constituted a reasonable exercise of the legislative power. Although the court conceded that possibly some better legislative solution might be devised, it declined to usurp the legislative function or to pass judgment on the wisdom of legislative acts.

In *Marshall* v. *United States*, 414 U.S. 417, 94 S. Ct. 700, 38 L. Ed. 2d 618 (1974), the Supreme Court was called upon to determine the constitutionality of that portion of the

Narcotic Addict Rehabilitation Act of 1966, 18 U.S.C. §§4251-4255, which excluded addicts with two or more prior felony convictions from discretionary rehabilitative commitments in lieu of penal incarceration. In that case, the petitioner had been previously convicted of three felonies. After considering the legislative history of the statute, the Court applied a rational basis test:

> "[I]t cannot be said that it was unreasonable or irrational for Congress to act on the predicate reflected in the legislative history and explicitly stated in the exclusion provision of §4251(f)(4), that a person with two or more prior felonies would be less likely to adjust and adhere to the disciplines and rigors of the treatment program and hence is a less promising prospect for treatment than those with lesser criminal record." *Id.* at 428, 94 S. Ct. at 707, 38 L. Ed. 2d at 627.

It is thus apparent that the Supreme Court and other federal courts have deferred to rational legislative classifications, although rehabilitative structures based upon more accurate classifications might be conceived.

We have recognized in *In Re Correia, supra,* that the Rhode Island Legislature has the power in the exercise of its wisdom to withhold the protection of parens patriae from all juveniles over 15 years of age. Indeed, based on the common law, it may well be that the Legislature could remove from special juvenile treatment all persons over 14 years of age. What the Legislature may do absolutely it may do conditionally, "provided that the conditions prescribed are applicable in like manner to every child in the class affected." 104 R.I. at 254, 243 A.2d at 761; *see Imperial Car Rental Corp.* v. *Lussier,* 97 R.I. 168, 196 A.2d 728, *cert. denied,* 387 U.S. 125, 84 S. Ct. 1658, 12 L. Ed. 2d 744 (1964); *Berberian* v. *Lussier,* 87 R.I. 226, 139 A.2d 869 (1958),

We believe that §14-1-7.1 which excludes from the jurisdiction of the Family Court a juvenile 16 years of age or older who has, after 16, committed two prior offenses which would have subjected him to an indictment if he were an

adult, and which provides that he shall thereafter be prosecuted for all subsequent felony crimes in an adult court, is a reasonable and rational classification and that it violates neither the due process clause nor the equal protection clause of the Fourteenth Amendment to the Constitution of the United States nor any provision of the Constitution of the State of Rhode Island.[3]

The state's appeal is sustained, the judgment of the Superior Court is vacated, and the case is remanded to the Superior Court for further proceedings.

*Dennis J. Roberts II,* Attorney General, *Alfred French Goldstein,* Special Assistant Attorney General, for plaintiff.

*Michael D. Coleman,* for defendant.

---

[3]We observe that a child is brought within the terms of §14-1-7.1 when he has committed two offenses after the age of 16 years which would render him "subject to an indictment if he were an adult." Further, §12-12-1.2 provides that except for offenses punishable by death or by a term of life imprisonment, any offense punishable by imprisonment for a term exceeding 1 year or by a fine exceeding $500 may be prosecuted by indictment *or* information. We will not now decide whether, in light of §12-12-1.2, the phrase "subject to an indictment if he were an adult" in 14-1-7.1, refers to an offender such as the present defendant who was charged by information. We reserve this question for a case in which the issue is specifically presented.